**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

DEIVIS SUERO,

      Plaintiff,

          v.

MOTORWORLD AUTOMOTIVE GROUP,
INC., t/b/d/a MOTORWORLD et. al,

      Defendants.

CIVIL ACTION NO. 3:16-cv-00686

(JUDGE CAPUTO)

## MEMORANDUM

Presently before the Court is a Motion for Partial Dismissal filed by Defendant Christopher Kovalchick (Doc. 25), a Motion to Dismiss filed by Defendant William Smith (Doc. 33), and a Motion for Partial Judgment on the Pleadings filed by Defendants Motorworld Automotive Group, Inc. t/d/b/a Motorworld ("Motorworld"), Jeff Evans, Allan Crawford, Michael Muchnik, and Scott Ashley (collectively, the "Motorworld Defendants") (Doc. 38). For the reasons that follow, Defendant Kovalchick's Motion will be granted, Defendant Smith's Motion will be granted in part and denied in part, and the Motorworld Defendants' Motion will be granted in part and denied in part.

### I. Background

The well-pleaded facts as set forth in Plaintiff's Complaint (Doc. 1) are as follows:

Plaintiff Deivis Suero is a Pennsylvania resident who was formerly employed by Defendant Motorworld. (Compl. ¶¶ 2, 18.) Plaintiff, who is "Hispanic/Latino," began working for Motorworld on or about July 28, 2014. (*Id.* ¶¶ 17-18.) On or about August 1, 2014, Plaintiff had just sold two cars when Defendants Jeff Evans, Allan Crawford, and Michael Muchnik, all of whom were Plaintiff's co-workers and are Caucasian, told Plaintiff to not sell any more cars or there would be consequences. (*Id.* ¶¶ 4, 21.) Later that day, Plaintiff went to Defendant William "Bill" Smith, a manager, and told him what

had happened. (*Id.* ¶ 23.) Defendant Smith did not take any action in response to Plaintiff's complaint. (*Id.*)

On or about August 5, 2014, Plaintiff sold a vehicle to a customer named Wilma Barrata. (*Id.* ¶ 24.) While speaking with Ms. Barrata, Defendant Crawford came over to Plaintiff and said "That's the last car you will ever sell." (*Id.* ¶ 25.) Plaintiff was then called into the manager's office and accused of stealing customers from other employees. (*Id.* ¶ 26.)

On or about August 15, 2014, Plaintiff again complained to Defendant Smith about how he was being treated by some of his co-workers. (*Id.* ¶ 28.) Plaintiff noted to Smith that such treatment included being given racially-charged nicknames, such as "Ferguson," which referred to the case involving the death of an African-American teenager named Michael Brown in Ferguson, Missouri. (*Id.* ¶¶ 29-30.) Plaintiff also noted that employees unplugged his computer, left trash on and in his desk, and rearranged his chairs right before a client came in. (*Id.* ¶ 31.) Plaintiff further noted that his car tires had been slashed twice. (*Id.* ¶ 32.) In response, Defendant Smith said the employees involved "were just joking" and did nothing to remedy the issues raised in Plaintiff's complaints. (*Id.* ¶ 33.)

On or around August 20, 2014, Defendant Christopher Kovalchick started working at Motorworld. (*Id.* ¶ 34.) Kovalchick told Plaintiff to go back to his own country and work in a factory, muted Plaintiff's phone so he did not know potential buyers were calling him, and attempted to steal potential buyers away from Plaintiff. (*Id.* ¶¶35-37.) In response, on August 23, 2014, Plaintiff again spoke with Defendant Smith and told him what was going on. (*Id.* ¶ 38.) Plaintiff expressed his concerns regarding the work environment at Motorworld, but no corrective action was taken. (*Id.* ¶ 39.)

On or around September 9, 2014, an employee looked into Plaintiff's car and saw a pistol in plain sight. (*Id.* ¶¶ 41-42.) Plaintiff had a carry permit for the pistol, but forgot

2

to put the gun away in his glove box. (*Id.* ¶ 41.) The employee who saw the pistol reported it to management. (*Id.* ¶ 42.) Plaintiff was called into Defendant Scott Ashley's office and written up for the incident. (*Id.* ¶ 43.) Ashley, a manager, had a drawer full of rifle bullets, but was never reprimanded for this conduct. (*Id.* ¶¶ 45, 78.)

In October 2014, Plaintiff tried to buy a truck and thought he could get a discount if he bought a vehicle from Motorworld. (*Id.* ¶ 46.) Plaintiff and his wife had to submit to a credit check in order to purchase the truck. (*Id.* ¶ 47.) When the Caucasian employees found out Plaintiff's credit score, which was poor, they told everyone in the office and made fun of Plaintiff and his wife. (*Id.* ¶ 48.)

On or about February 6, 2015, Plaintiff called Motorworld around 10:20 A.M. to inform management he would be running late because his car battery had died. (*Id.* ¶ 50.) Plaintiff arrived at work around 12:15 P.M. (*Id.* ¶ 51.) Around 3:00 P.M., Defendant Kovalchick approached Plaintiff and said: "What, did your car get repo'd too? Were you not able to make the payments? Did you know 97% of cars that are repo'd belong to black and Latino people because they don't pay for anything including food stamps?" (*Id.* ¶ 52.) After Plaintiff told Kovalchick to leave him alone, Kovalchick responded "Get the fuck out of America and go back to your country and you'll never see my face again." (*Id.* ¶¶ 53-54.) Later that day, Plaintiff went to Defendant Ashley's office to tell him that Kovalchick was insulting him. (*Id.* ¶ 55.) Ashley told Plaintiff to not worry about Kovalchick and then left the room. (*Id.* ¶ 56.) No remedial action was taken in response to Plaintiff's complaint. (*Id.* ¶ 57.)

On or around February 7, 2015, Plaintiff went to Defendant Kovalchick's office to ask him a question for a client named Juan Valdez. (*Id.* ¶ 58.) Plaintiff asked Kovalchick if he could borrow a pen so he could write down Kovalchick's answer, to which Kovalchick replied: "Don't steal my pen, you immigrant. Is it true you buy your papers illegally? You're just another illegal immigrant. Take your family and go back to your country." (*Id.* ¶ 59.) Plaintiff left Kovalchick's office, but had to return soon thereafter to

ask a follow up question for Mr. Valdez, at which time Kovalchick stated: "Did this fucking guy a.k.a. Juan Valdez buy his papers from the same place as you? All immigrants are fucking ignorant! You're in the wrong job. I'll tell you, you would look good carrying water buckets on a farm. That would be the perfect job for an immigrant." (*Id.* ¶ 61.)

On or about February 9, 2015, Plaintiff was talking to Dustin Locovacy about the truck he intended to buy. (*Id.* ¶ 62.) Defendant Kovalchick overheard the conversation and said he was going to go "talk to the boss" because Plaintiff "should not get the truck" because he would just fill it up with immigrants. (*Id.* ¶¶ 63-64.)

On February 21, 2015, Plaintiff went to Defendant Kovalchick's office to ask about an application that a client had submitted online. (*Id.* ¶ 65.) On his way, Plaintiff passed by Brianna Collanery, the office secretary, and said hello. (*Id.* ¶ 66.) Kovalchick came out of his office and said: "Make sure he has his chain on. You know how animals are." (*Id.* ¶ 67.) Later that day, some employees were watching the film "Planet of the Apes" in the conference room. (*Id.* ¶ 68.) Kovalchick remarked to Plaintiff: "Look at your family on TV, that is never going to happen, you monkey." (*Id.* ¶ 69.)

On or about February 27, 2015, Plaintiff went to Defendant Kovalchick's office to ask him about a customer's application. (*Id.* ¶ 70.) Kovalchick told Plaintiff "[t]hat customer is garbage" and  "to get [the customer] the fuck out of here and to get the fuck out of my office right away because every time you walk in my office it gets dark." (*Id.* ¶ 71.)

On or about February 28, 2015, Defendant Kovalchick passed by Plaintiff's office and said: "You haven't come by my office today, what are you doing, selling drugs?" (*Id.* ¶ 72.) Plaintiff told Kovalchick to leave him alone, to which Kovalchick responded: "This is America and you don't follow the rules, boy." (*Id.* ¶¶ 73-74.) Later that day, Plaintiff went to Kovalchick's office to ask him a question regarding a client's application, at

4

which time Kovalchick asked Plaintiff: "Do you know where I can get crystal meth?" (*Id.* ¶ 75.) Plaintiff responded "No," as he did not use or sell drugs. (*Id.* ¶ 76.) Kovalchick told Plaintiff to "stop talking shit and call your family, someone must know where to get drugs from." (*Id.* ¶ 77.)

On or about March 7, 2015, Plaintiff again went to see Defendant Ashley to complain about Defendant Kovalchick's conduct towards him. (*Id.* ¶ 78.) On or about March 10, 2015, Kovalchick told the managers to fire Plaintiff. (*Id.* ¶ 80.) On or about March 15, 2015, Plaintiff texted Defendant Smith: "I don't feel safe anymore and I'm coming to collect my things," and thereafter resigned from Motorworld. (*Id.* ¶¶ 81-82.) Plaintiff asserts that he was subject to a constructive discharge. (*Id.* ¶ 82.)

Plaintiff filed a charge of discrimination with the Philadelphia office of the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC") on July 15, 2015. (*Id.* ¶ 13; Pl.'s Br. in Opp'n Ex. A, Doc. 30.) A right to sue letter was issued by the EEOC on January 26, 2016.

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of her claims. *See Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000). The Court does not consider whether a plaintiff will ultimately prevail. *Id.* A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

A pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement required by Rule 8(a)(2) must "'give the defendant fair notice of what the . . .

claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Detailed factual allegations are not required. *Twombly*, 550 U.S. at 555. However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Instead, a complaint must "show" this entitlement by alleging sufficient facts. *Id*. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). As such, "[t]he touchstone of the pleading standard is plausibility." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

The inquiry at the motion to dismiss stage is "normally broken into three parts:  (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679**.**

In deciding a motion to dismiss, the Court should consider the complaint, exhibits attached to the complaint, and matters of public record. *Mayer v. Belichick*, 605 F.3d

223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Pension Benefit Guar. Corp.*, 998 F.2d at 1196. The Court need not assume that the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions,'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997)).

### III. Discussion

Plaintiff filed the instant lawsuit on April 25, 2016. (Doc. 1.) Count I raises a claim of unlawful discrimination on the basis of race, color, and national origin, and a claim for retaliation, against Defendant Motorworld, in violation of Title VII of the Civil Rights Act of 1963, 42 U.S.C. §§ 2000e et seq. ("Title VII"). Count II alleges claims of race discrimination and retaliation against all Defendants, in violation of 42 U.S.C. § 1981. Count III raises claims of discrimination and retaliation under the Pennsylvania Human Relations Act ("PHRA") against all Defendants. On June 13, 2016, Defendant Kovalchick filed a Motion for Partial Dismissal (Doc. 25), seeking to dismiss Count III of Plaintiff's Complaint. On June 21, 2016, Defendants Motorworld, Jeff Evans, Allan Crawford, Michael Muchnik, and Scott Ashley (collectively, the "Motorworld Defendants") filed an Answer and raised various affirmative defenses. (Doc. 27.) On July 18, 2016, Defendant Bill Smith filed a Motion to Dismiss (Doc. 33), seeking to dismiss Counts II and III of Plaintiff's Complaint and strike the request for punitive damages. On August 31, 2016, the Motorworld Defendants' filed a Motion for Partial Judgment on the Pleadings, seeking to dismiss Count I against all individually-named Defendants, to the extent they were named in that Count, and Count III against Defendants Evans, Crawford, and

Muchnik. Furthermore, all Defendants seek to dismiss as time-barred claims under the PHRA based on conduct that occurred prior to January 16, 2015. (*See* Kovalchick Br. in Supp. 10-13, Doc. 26; Smith Br. in Supp. 8-9, Doc. 34; Motorworld Defs.' Br. in Supp. 8, Doc. 40.). The Motions are ripe for review.

**A.      Defendant Kovalchick's Motion to Dismiss Count III**

Defendant Kovalchick moves to dismiss Count III of Plaintiff's Complaint, which alleges violations of the PHRA against all Defendants, including Kovalchick. In support of his Motion, Kovalchick argues that he cannot be held individually liable under the PHRA because he was not Plaintiff's supervisor. Since he was not a supervisory employee, Kovalchick contends that he cannot possess the requisite intent necessary to be an aider and abettor of discrimination under 43 P.S. § 955(e) as a matter of law. Plaintiff acknowledges that multiple federal courts applying Pennsylvania law have interpreted § 955(e) to apply only to supervisory employees, but nevertheless contends that such interpretations are contrary to the statutory text. The Court agrees with the position advanced by Kovalchick.

The PHRA differs from Title VII in that certain employees may be held individually liable for discrimination. 43 P.S. § 955(e); *see Davis v. Levy, Angstreich, Finney, Baldante, Rubenstein & Coren P.C.*, 20 F. Supp. 2d 885, 887 (E.D. Pa. 1998). Section 955(e) provides the "sole basis of individual liability in the PHRA." *Santai v. Fred Beans Ford, Inc.*, No. 10–2367, 2011 WL 3606836, at *3 (E.D. Pa. Aug. 16, 2011). Section 955(e) forbids:

> [A]ny person, employer, employment agency, labor organization or employee, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice, or to obstruct or prevent any person from complying with the provisions of this act or any order issued thereunder, or to attempt, directly or indirectly, to commit any act declared by this section to be an unlawful discriminatory practice.

In *Dici v. Pennsylvania*, 91 F.3d 542 (3d Cir. 1996), the Third Circuit addressed the scope of individual liability under § 955(e). In that case, the court noted that the individual defendants at issue–a supervisor and a co-worker, respectively–each qualified as a "person" and "employee" within the meaning of § 955(e). *Id.* at 552. Nevertheless, the Third Circuit held that the co-worker was not a "proper defendant" under the statute. *Id.* Relying on an opinion from the District of New Jersey that interpreted a "nearly identical provision of the New Jersey Law Against Discrimination," the *Dici* court concluded that "[a] non-supervisory employee who engages in discriminatory conduct cannot be said to 'intend' that his employer fail to [take remedial action]." *Id.* at 553 (quoting *Tyson v. CIGNA Corp.*, 918 F.Supp. 836, 841 (D.N.J. 1996)). Because a nonsupervisory employee lacks the requisite intent necessary for accomplice liability, the Court granted summary judgment in favor of the co-worker on the PHRA claim. *See id.*

Subsequent to the decision in *Dici*, district courts sitting in the Third Circuit have consistently held that "[l]iability under § 955(e) attaches only to supervisory employees." *Braddock v. SEPTA*, No. 13-6171, 2016 WL 1182098, at *9 (E.D. Pa. Mar. 28, 2016); *see, e.g.*, *Brzozowski v. Pa. Tpk. Comm'n*, 165 F. Supp. 3d 251, 263 (E.D. Pa. 2016) ("Courts have emphasized that liability under § 955(e) only extends to those who are in a *supervisory* role as 'only supervisors can share the discriminatory purpose and intent of the employer that is required for aiding and abetting.'") (emphasis in original) (citation omitted); *Thomas v. St. Mary Med. Ctr.*, 22 F. Supp. 3d 459, 476 (E.D. Pa. 2014) (noting that "only supervisors, as opposed to co-workers, can be liable under  § 955(e)"); *Hollinghead v. City of York*, 11 F. Supp. 3d 450, 465 (M.D. Pa. 2014) (citing *Dici*, 91 F.3d at 552 (noting that an "individual employer may be held liable in his personal capacity under the PHRA if the individual is a supervisor and the plaintiff can demonstrate that the supervisor aided or furthered the employer's own discriminatory practices")); *Carlton v. City of Phila.*, No. Civ.A. 03-1620, 2004 WL 633279, at *8 (E.D. Pa. Mar. 30, 2004) ("Only supervisory employees, not co-workers, may be held liable under § 955(e), on the theory that only the former can share the discriminatory purpose and intent of the employer that

is required for aiding and abetting."); *Davis*, 20 F. Supp. 2d at 887 (noting that "an individual supervisory employee can be held liable under an aiding and abetting/accomplice liability theory pursuant to § 955(e) for his own direct acts of discrimination or for his failure to take action to prevent further discrimination by an employee under supervision," and finding plaintiff's averments that the individual defendants were "partners" of the corporation to adequately plead that they were "supervisors for purposes of PHRA liability").

Plaintiff does not dispute that Defendant Kovalchick was not his supervisor, but argues instead that the plain language of § 955(e) never intended to cover only "supervisors," and that the Third Circuit misinterpreted § 955(e) in *Dici*. (Pl.'s Br. in Opp'n 6-7, Doc. 30.) However, Plaintiff cites to no case law supporting his position. Although the plain language of the PHRA does not appear to limit liability under § 955(e) to supervisory employees only, our sister courts "have distinguished between nonsupervisory and supervisory employees and imposed liability only on the latter, on the theory that supervisory employees can share the discriminatory intent and purpose of the employer." *Bacone v. Phila. Hous. Auth.*, No. 01-CV-419, 2001 WL 748177, at *2 (E.D. Pa. June 27, 2001) (citation omitted). The Court concurs with its sister courts' interpretation of § 955(e) and thus concludes that only supervisory employees may be held personally liable under the PHRA as a matter of law. Accordingly, because Kovalchick was not a supervisory employee, the Court will grant his Motion and dismiss Count III with prejudice as to Kovalchick.

**B.    Defendant Smith's Motion to Dismiss Counts II and III, and Motion to Strike Request for Punitive Damages**

### 1.    Defendant Smith's Motion to Dismiss Count II Will Be Denied

Defendant Smith seeks to dismiss Count II of Plaintiff's Complaint alleging race discrimination and retaliation in violation of 42 U.S.C. § 1981 on the grounds that: (1)

Plaintiff failed to plead the existence of a contract; (2) Plaintiff's employment relationship with Defendant Motorworld is insufficient to hold Smith individually liable under § 1981; and (3) Plaintiff fails to plead facts demonstrating Smith intended to discriminate against Plaintiff on the basis of race. For the following reasons, Smith's Motion to Dismiss Count II will be denied.

Section 1981[1] prohibits race discrimination in the making and enforcing of contracts. *Rivers v. Roadway Exp., Inc.*, 511 U.S. 298, 302 (1994). In order to state a claim under § 1981, a plaintiff must plead sufficient facts in support of the following elements: (1) plaintiff is a member of a racial minority; (2) defendant intended to discriminate on the basis of race; and (3) defendant's discrimination concerned one or more of the activities enumerated in the statute, which includes the right to make and enforce contracts. *Brown v. Philip Morris Inc.*, 250 F.3d 789, 797 (3d Cir. 2001). Unlike claims brought under Title VII, private individuals can be held liable for violating § 1981, *see Cardenas v. Massey*, 269 F.3d 251, 268 (3d Cir. 2001), so long as there is "some affirmative link to causally connect the actor with the discriminatory action." *Jean-Louis v. Am. Airlines*, No. 08-CV-3898, 2010 WL 3023943, at *4 (E.D.N.Y. July 30, 2010) (citation omitted). However, "the substantive elements of a claim under section 1981 are generally identical to the elements of an employment discrimination claim under Title VII." *Brown v. J. Kaz, Inc.*, 581 F.3d 175, 181 (3d Cir. 2009).

A right to relief under § 1981 can be shown by (1) purposeful racial discrimination; (2) a hostile work environment based on racial harassment; or (3) retaliation. *Ellis v. Budget Maint., Inc.*, 25 F. Supp. 3d 749, 753 (E.D. Pa. 2014). At bottom, claims brought under § 1981 require proof of purposeful or intentional racial discrimination. *Collins v. Christie*, No. 06-4702, 2008 WL 2736418, at *10 (E.D. Pa. July 11, 2008) (citing *Gen.*

---

[1]    42 U.S.C. § 1981 states in relevant part: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts. . . and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens. . . ."

*Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 391 (1982)). But in order to survive a motion to dismiss, a plaintiff need not establish a full *prima facie* case; "[i]t suffices for her to plead facts that, construed in her favor, state a claim of discrimination that is 'plausible on its face.'" *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 791 (3d Cir. 2016).

Smith first contends that Plaintiff has failed to prove the existence of a contract triggering liability under § 1981. However, Plaintiff's allegation that Smith's discrimination interfered with his at-will employment satisfies the requirement that a defendant's racial discrimination concern an activity enumerated in the statute. A "party can be liable under § 1981 if that party intentionally interferes, on the basis of race, with another's right to make and enforce contracts, regardless of whether the employer or anyone else may also be liable." *Collins*, 2008 WL 2736418, at *10. The statute defines "make and enforce contracts" to include the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42. U.S.C. § 1981(b). The district court in *McClease v. R.R. Donnelly & Sons Co.* undertook a detailed analysis of whether the term "contract" encompassed at-will employment under the statute. 226 F. Supp. 2d 695 (E.D. Pa. 2002). Noting first that "[e]very appellate court that has examined the legislative history of [42 U.S.C. § 1981, as amended in 1991] has concluded that Congress intended the term 'contract' to encompass at-will employment," the court determined that the legislative history clearly evidenced an intent for the term "contract" to include at-will employment. *McClease*, 226 F. Supp. 2d at 701; *see Jean-Louis*, 2010 WL 3023943, at *3 (noting that at-will employees "have contractual rights that may be enforced through § 1981"). The Court agrees with its sister courts that the term "contract" as used in the statute includes at-will employment. Plaintiff's allegations thus satisfy the enumerated activity requirement.

Smith next argues that Plaintiff has failed to plead facts that demonstrate he intended to discriminate against Plaintiff on the basis of race or was personally involved in the discriminatory conduct. The Third Circuit has held that individual employees may be liable under § 1981 if they "are personally involved in the discrimination . . . and if they intentionally caused [an infringement of plaintiff's] section 1981 rights, or if they authorized, directed, or participated in the alleged discriminatory conduct." *Al-Khazraji v. Saint Francis Coll.*, 784 F.2d 505, 518 (3d Cir. 1986). Individual liability may lie "regardless of whether the corporation may also be liable." *Id.* Accordingly, employees may be held individually liable if they were "personally involved" in the discriminatory conduct at issue, and either "intentionally caused" the infringement of the plaintiff's § 1981 rights or "authorized, directed, or participated in the alleged discriminatory conduct." *Id.*; *see Brown v. TD Bank, N.A.*, No. 15-5474, 2016 WL 1298973, at *9 (E.D. Pa. Apr. 4, 2016). A supervisor may be found to have been personally involved with the discriminatory conduct if he was "grossly negligen[t] in the supervision of [his] subordinates who committed the wrongful acts" or "deliberate[ly] indifferen[t] to the rights of [plaintiff] by failing to act on information indicating that unconstitutional acts were occurring." *Aboudekika v. Del. River & Bay Auth.*, No. 10-5830, 2011 WL 5080216, at *2 (D.N.J. Oct. 25, 2011) (citation omitted); *see Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 229 (2d Cir. 2004) ("Personal involvement, within the meaning of this concept, includes not only direct participation in the alleged violation but also gross negligence in the supervision of subordinates who committed the wrongful acts and failure to take action upon receiving information that constitutional violations are occurring.").

Defendant Smith's argument in support of dismissal is misplaced. The allegations in the Complaint, accepted as true, indicate Smith possessed the requisite intent to discriminate and was personally involved in the alleged discriminatory conduct. The Complaint states that Plaintiff complained to Smith, a manager at Motorworld, three

different times over the course of one month[2] about being subject to harassment and discrimination based on his race. However, Smith failed to take any action in response to Plaintiff's complaints and told Plaintiff the employees were "just joking" around. (*See* Compl. ¶¶ 23, 28-33, 38-39.) Specifically, Plaintiff alleges he complained to Smith that one or more of his co-workers referred to him as "Ferguson," told him to go back to his own country and work in a factory, and deliberately mistreated him and his property in the workplace due to his race. Despite these multiple complaints of racial discrimination, Smith allegedly did nothing and allowed the discriminatory conduct to persist. Plaintiff alleges that this resulted in a hostile work environment and, ultimately, Plaintiff's constructive discharge. A manager's deliberate indifference to, or participation in, a subordinate's acts of racially-motivated conduct can satisfy the element of intent necessary to give rise to individual liability under § 1981. *See Cardenas v. Massey*, 269 F.3d 251, 269 (3d Cir. 2001). Furthermore, the allegations in the Complaint sufficiently allege Smith's personal involvement in the discriminatory conduct. *See Francis v. Atlas Machining & Welding, Inc.*, No. 11-6487, 2013 WL 592297, at *4 (E.D. Pa. Feb. 15, 2013) (finding defendants could be held individually liable under § 1981 for failing to respond to reported instances of verbal harassment); *Garner v. N.E.W. Indus., Inc.*, No. 13-C-0569, 2013 WL 6806186, at *2 (E.D. Wis. Dec. 19, 2013) (citing *Francis*, 2013 WL 592297, at *4 ("[T]he plaintiff alleges that he complained to [a supervisor] about the harassment and that [the supervisor] did not take action to prevent the hostile work environment from persisting. This is sufficient to allege personal involvement under section 1981.")).

---

[2]     Unlike claims brought under the PHRA, a § 1981 claim does not have to be filed with the PHRC within 180 days of the alleged act of discrimination. *See Johnson v. Fed. Exp. Corp.*, 996 F. Supp. 2d 302, 314 (M.D. Pa. 2014) (noting that race discrimination claims arising under 42 U.S.C. § 1981, as amended in 1991, are subject to a four-year statute of limitations); *cf* 43. P.S. § 959(h). Accordingly, contrary to Defendant Smith's suggestion, Plaintiff need not rely on the continuing violations doctrine to support a § 1981 claim against Smith. (*See* Smith's Br. in Reply 7, Doc. 36.)

Plaintiff sufficiently states the existence of a contract as defined under § 1981 and that Defendant Smith intentionally discriminated against Plaintiff on the basis of his race. Accordingly, the Court will deny Smith's Motion with respect to Count II.

### 2.      Defendant Smith's Motion to Dismiss Count III Will Be Granted

Defendant Smith argues that Plaintiff's PHRA claim in Count III must be dismissed as time barred and for failure to allege that Smith contributed to the discrimination. Plaintiff only contends that the continuing violations doctrine should apply to his hostile work environment claim under the PHRA, and therefore his claim against Smith in his individual capacity should not be dismissed as time barred. For the reasons that follow, the Court will grant Smith's Motion and dismiss without prejudice Count III as to Smith.

As noted in *supra* Part III.A, a defendant-employee may be held personally liable under the PHRA if he is a supervisory employee and aided or furthered the employer's discriminatory practices. *See* 43 P.S. § 955(e); *Dici v. Pennsylvania*, 91 F.3d 542, 552-53 (3d Cir. 1996). Before a plaintiff-employee can file suit under the PHRA, he must first exhaust his claim by presenting it in an administrative charge to the PHRC. *Weems v. Kehe Food Distribs., Inc.*, 804 F. Supp. 2d 339, 341 (E.D. Pa. 2011) (citing *Antol v. Perry*, 82 F.3d 1291, 1295–96 (3d Cir. 1996)). Under the PHRA, a complainant must file a complaint with the Commission within 180 days of the alleged act of discrimination. 43 P.S. § 959(h); *Woodson v. Scott Paper Co.*, 109 F.3d 913, 925 (3d Cir. 1997). If a complainant fails to timely file a charge with the PHRC, he is precluded from the judicial remedies provided for under the PHRA. *Woodson*, 109 F.3d at 925; *Vincent v. Fuller Co.*, 616 A.2d 969, 974 (Pa. 1992). Pennsylvania courts "strictly interpret" this timely-filing requirement. *Woodson*, 109 F.3d at 925.

Under the continuing violations doctrine, "discriminatory acts that are not individually actionable may be aggregated to make out a hostile work environment claim." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 165 (3d Cir. 2013). "[A]n act that falls

outside the applicable limitations period may be deemed timely if a plaintiff shows that: (1) it is part of an 'ongoing practice or pattern of discrimination' by the defendant; and (2) the 'last act evidencing the continuing practice falls within the limitations period.'" *Oliver v. Clinical Practices of Univ. of Pa.*, 921 F. Supp. 2d 434, 443 (E.D. Pa. 2013) (citation omitted). Thus, in order to avail himself of the doctrine, a plaintiff must first demonstrate "that the last act of the *continuing practice*—not just any discriminatory practice—occurred within the limitations period." *Id.* at 444 n.11 (citing *Rush v. Speciality Gases, Inc.*, 113 F.3d 476, 481 (3d Cir. 1997) (emphasis in original)). Next, a plaintiff must show that the acts outside of the limitations period are part of an ongoing pattern or practice of discrimination. The Third Circuit has directed courts to consider at least two factors in assessing whether a plaintiff has demonstrated an ongoing pattern or practice of discrimination: (1) subject matter: whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation; and (2) frequency: whether the acts are recurring or more in the nature of isolated incidents. *Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001).[3] However, allegations of "[d]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 165 (3d Cir. 2013). Consequently, allegations of unlawful "termination, failure to promote, denial of transfer, refusal to hire, wrongful suspension, wrongful discipline, denial of training, [and] wrongful accusation" are considered discrete acts and thus not subject to aggregation under a continuing violations theory. *O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d Cir. 2006).

---

[3]    The Third Circuit has clarified that "permanency" is no longer required to establish a continuing violation. *See Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 166-67 (3d Cir. 2013) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117-18 (2002)); *Lamb v. Montgomery Twp.*, No. 15-6759, 2016 WL 7426125, at *9 (E.D. Pa. Dec. 23, 2016).

Plaintiff filed his administrative charge with the PHRC on July 15, 2015. (Pl.'s Br. in Opp'n Ex. A, Doc. 30.) As such, Smith argues that all alleged acts of discrimination that involve Smith occurred prior to January 16, 2015 and, therefore, are time barred.

With respect to Plaintiff's PHRA claim against Smith individually, the relevant "acts" which constitute the claim must relate to his aiding and abetting of Motorworld's discriminatory practices, because individual liability under the PHRA attaches only to supervisory employees who further the employer's discriminatory practices. *Braddock v. SEPTA*, No. 13-6171, 2016 WL 1182098, at *9 (E.D. Pa. Mar. 28, 2016). Assuming, without deciding, that Smith's alleged conduct constitutes an ongoing practice or pattern of discrimination, Plaintiff's Complaint does not allege a single action or failure on the part of Smith that took place within the filing period. *See Oliver*, 921 F. Supp. 2d at 444 n.11 ("[T]he last act of the *continuing practice*—not just any discriminatory practice—[must have] occurred within the limitations period."). Each instance of Smith's alleged failure to take corrective measures occurred in August 2014, well before January 16, 2015. The only time Smith is mentioned in the Complaint on or after January 16, 2015 is when Plaintiff alleges he sent Smith a text message on March 15, 2015, informing Smith that he was resigning due to the work environment. (Am. Compl. ¶ 81.) Because Plaintiff has not alleged that at least one instance of Smith's aiding and abetting took place within the filing period, Plaintiff may not avail himself of the continuing violations doctrine with respect to his PHRA claim against Smith in his individual capacity. Accordingly, the Court will grant Defendant Smith's Motion and dismiss without prejudice Count III of Plaintiff's Complaint as to Smith.

### 3.   Defendant Smith's Motion to Strike Plaintiff's Request for Punitive Damages Will Be Denied

Lastly, Defendant Smith argues that Plaintiff's request for punitive damages should be stricken as to the claims against Smith. First, Smith notes correctly that punitive damages are not available under the PHRA. *See Hoy v. Angelone*, 720 A.2d 745, 751

(Pa. 1998). Accordingly, to the extent Plaintiff seeks punitive damages from any named Defendant for violations of the PHRA, such a request is stricken. Second, Smith contends that Plaintiff's request for punitive damages for Smith's alleged violation of 42 U.S.C. § 1981 should be stricken because the allegations do not establish that Smith "acted with the necessary intent and indifference to support a punitive damages claim." (Def. Smith's Br. in Supp. 13, Doc. 34.) Plaintiff argues that the request for punitive damages from Smith should not be stricken at this early stage.[4] (Pl.'s Br. in Opp'n 11-12, Doc. 35.) The Court declines to strike Plaintiff's request for punitive damages from Smith at this juncture.

A plaintiff may seek punitive damages from individual defendants for claims arising under 42 U.S.C. § 1981. *See Sec. & Data Techs., Inc. v. Sch. Dist. of Phila.*, 145 F. Supp. 3d 454, 469 (E.D. Pa. 2015) (citing *Bennis v. Gable*, 823 F.2d 723, 734 (3d Cir. 1987)); *Sharif v. MIQ Logistics, Inc.*, No. 3-cv-13-2983, 2014 WL 1653191, at *3 (M.D. Pa. Apr. 23, 2014). "The standard for punitive damages in a federal civil rights action . . . does not require 'outrageousness': a jury may 'assess punitive damages in [a civil rights action] when the defendant's conduct is shown to be motivated by evil motive or intent, or

---

[4]    In support of his request for punitive damages, Plaintiff argues that the request is especially appropriate in light of a recent lawsuit involving Smith, in which another employee of Motorworld alleged that, *inter alia*, Smith failed to take corrective measures after the employee complained about racial discrimination in the workplace. *See Charnitski v. Motorworld*, No. 10-cv-02024-MEM (M.D. Pa. Aug. 15, 2013). In deciding a motion to dismiss, courts may take judicial notice of facts that are "accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Se. Pa. Transp. Auth. v. Orrstown Fin. Servs., Inc.*, No. 1:12-cv-00993, 2016 WL 7117455, at *5 (M.D. Pa. Dec. 7, 2016) (quoting Fed. R. Evid. 201(b)). However, generally courts may not take judicial notice of findings of fact from another case. *See Walker v. Woodford*, 454 F. Supp. 2d 1007, 1022 (S.D. Cal. 2006); *IKB Int'l S.A. v. Bank of Am.*, No. 12-cv-4036, 2014 WL 1377801, at *7 (S.D.N.Y. Mar. 31, 2014). Therefore, the Court will not take notice of the assertions or findings of fact contained in the Exhibits attached to Plaintiff's Brief in Opposition (Doc. 35), and will strike all references to the findings of fact in the *Charnitski* case from Plaintiff's Brief.

when it involves reckless or callous indifference to the federally protected rights of others.'" *Alexander v. Riga*, 208 F.3d 419, 430-31 (3d Cir. 2000) (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)); *Sharif*, 2014 WL 1653191, at *3 ("A plaintiff may be entitled to punitive damage[s] . . . when his or her employer engages in discriminatory practices with 'malice or reckless indifference to the federally protected rights of an aggrieved individual.'"). In order to be subject to punitive damages for engaging in a discriminatory practice, a defendant must have "knowledge that he or she may be acting in violation of federal law," not merely "an awareness that he or she is engaging in discrimination." *Johnson v. Fed. Exp. Corp.*, 996 F. Supp. 2d 302, 321 (M.D. Pa. 2014) (citing *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 534 (1999)).

Plaintiff alleges he told Defendant Smith about the ongoing discriminatory actions being perpetrated against him by his co-workers on multiple occasions, yet Smith, despite being on notice that such conduct was occurring, did not attempt to take any remedial measures. Plaintiff's Complaint describes a workplace environment in which racially discriminatory conduct was persistent and overt, and permitted to continue despite complaints to management. Furthermore, Plaintiff alleges that this conduct was "deliberate" and "malicious." (Compl. ¶ e.) In light of Plaintiff's allegations, the Court declines to strike Plaintiff's request for punitive damages at this stage of the proceedings. *See Sharif*, 2014 WL 1653191, at *4. Smith may renew his objection to Plaintiff's request for punitive damages after the parties have engaged in discovery.

**C.    Motorworld Defendants' Motion for Partial Judgment on the Pleadings**

### 1.    The Court Will Not Strike the Motorworld Defendants' Motion

The Motorworld Defendants filed the instant Motion on August 31, 2016. (Doc. 38.) Plaintiff first argues that the Motion should be denied as untimely because the Motorworld Defendants filed their Answer on June 21, 2016 (Doc. 27), which did not raise the instant grounds for dismissal as affirmative defenses. Alternatively, Plaintiff requests the Court

treat the Motion as one for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Plaintiff's argument is moot because the Motorworld Defendants have, in fact, brought the present Motion under Rule 12)(c). Although they refer to the Motion as a "motion to dismiss," the Motorworld Defendants make clear that the Motion is being brought pursuant to Rule 12(c). (*See* Motorworld Defs.' Mot. 1, Doc. 38; Motorworld Defs.' Br. in Supp. 4, Doc. 40.) Accordingly, the Court will treat the Motion as one for partial judgment on the pleadings, which serves essentially the same function as a motion to dismiss under Rule 12(b)(6). *See Trs. of Univ. of Pa. v. Mayflower Transit, Inc.*, No. 97-1111, 1997 WL 598001, at *1-*2 (E.D. Pa. Sept. 16, 1997).

### 2.    Count I Will Be Dismissed as to All Individual Defendants

The Motorworld Defendants move to dismiss Count I as to Defendants Evans, Crawford, Muchnik, and Ashley, on the ground that individuals cannot be held liable under Title VII as a matter of law. (Motorworld Def.'s Br. in Supp. 5, Doc. 40.) Plaintiff acknowledges that there is no individual liability under Title VII. (Pl.'s Br. in Opp'n 6 n.2, Doc. 45.) Accordingly, Count I will be dismissed with prejudice as to all Defendants other than Defendant Motorworld.

### 3.    Count III Will Be Dismissed as to Defendants Evans, Crawford, and Muchnik

The Motorworld Defendants next move to dismiss Count III as to Defendants Evans, Crawford, and Muchnik, on the ground that they are not supervisory employees and therefore not proper defendants under 43 P.S. § 955(e) as a matter of law. Plaintiff does not contend that any of these three Defendants were in fact supervisory employees, but instead rehashes the same argument made in response to Defendant Kovalchick's Motion for Partial Dismissal. Just as the Court found Plaintiff's argument unpersuasive in response to Kovalchick's Motion, it likewise finds the argument unavailing in the present context. Because individual "[l]iability under § 955(e) attaches only to supervisory

employees," *Braddock v. SEPTA*, No. 13-6171, 2016 WL 1182098, at *9 (E.D. Pa. Mar. 28, 2016), and because Defendants Evans, Crawford, and Muchnik are not alleged to have been supervisors, the Court will dismiss with prejudice Count III as to those Defendants. *See supra* Part III.A.

> **4.    The Court Will Permit Plaintiff to Proceed with a Hostile Work Environment Claim Under the PHRA Against Defendant Motorworld Under the Continuing Violations Doctrine**

Lastly, the Motorworld Defendants argue that the alleged discriminatory acts that occurred prior to January 16, 2015 must be dismissed as time barred under the PHRA. In response, Plaintiff contends that, for purposes of his hostile work environment claim under the PHRA, he should be permitted to avail himself of the continuing violations doctrine. (Pl.'s Br. in Opp'n 9, Doc. 45.) The Court agrees, and Plaintiff will be permitted to rely on the continuing violations doctrine to support his claim for a hostile work environment under the PHRA against Defendant Motorworld.

Where a plaintiff seeks recovery for a "discrete discriminatory act" under the PHRA, he must file an administrative charge within the 180-day limitations period. *Lamb v. Montgomery Twp.*, No. 15-6759, 2016 WL 7426125, at *9 (E.D. Pa. Dec. 23, 2016). However, under the continuing violations doctrine, a charge alleging a claim for hostile work environment "will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period." *Yeager v. UPMC Horizon*, 698 F. Supp. 2d 523, 540 (W.D. Pa. 2010) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002) (plurality opinion)); *see Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 165-66 (3d Cir. 2013). As previously noted, district courts must consider at least two factors in assessing whether a plaintiff has demonstrated an ongoing pattern or practice of discrimination: (1) subject matter: whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation; and (2) frequency: whether the acts are recurring or more in the

nature of isolated incidents. *Mandel*, 706 F.3d at 165-66; *Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001).

Plaintiff has alleged multiple racially discriminatory acts that form the basis of his hostile work environment claim that occurred within the applicable limitations period. (*See, e.g.*, Compl. ¶¶ 52-57, 59, 61, 67-69, 71-74, 78, 81-82.) The allegations of discriminatory conduct occurring before January 16, 2015 concern the same type of racial discrimination, involve many of the same parties, and were more than isolated instances. For the purposes of the present Motion, the Court will permit Plaintiff to submit evidence under the continuing violations doctrine in support of his hostile work environment claim under the PHRA. *See Napier v. Cty. of Snyder*, 833 F. Supp. 2d 421, 427 & n.5 (M.D. Pa. 2011).

However, with respect to Plaintiff's PHRA claim against Defendant Ashley under 43 P.S. § 955(e), Plaintiff may not rely on the continuing violations doctrine to support this claim. The only allegation concerning Ashley outside of the limitations period claims that Ashley reprimanded Plaintiff for having a pistol in his car in plain sight on company property. (Compl. ¶ 43.) Plaintiff claims this was discriminatory because Plaintiff was legally permitted to have a pistol, and because Ashley kept rifle bullets in his desk drawer and was never reprimanded for this conduct. (*Id.* ¶¶ 44-45.) This action, assuming it was discriminatory, is properly characterized as a wrongful discipline. However, a wrongful discipline is a discrete action that cannot be aggregated with other discriminatory conduct under a continuing violations theory. *See O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d Cir. 2006) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002)). Therefore, Plaintiff may not rely on the doctrine to support his PHRA claim against Ashley.

Accordingly, the Motorworld Defendants' Motion seeking dismissal of the alleged discriminatory conduct that occurred outside of the limitations period will be denied as to Plaintiff's hostile work environment claim under the PHRA against Defendant Motorworld.

22

The Motion will be granted as to Plaintiff's aiding and abetting claim under the PHRA against Defendant Ashley individually.

**D.      Leave to Amend**

The Third Circuit has instructed that if a complaint is vulnerable to a 12(b)(6) dismissal, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008). Here, because Plaintiff might be able to allege facts sufficient to state a claim under 43 P.S. § 955(e) against Defendant Smith, the Court will grant leave to amend that claim. Amendments to all other dismissed claims, however, would be futile because they fail as a matter of law.

## IV. Conclusion

For the above stated reasons, Defendant Kovalchick's Motion will be granted, Defendant Smith's Motion will be granted in part and denied in part, and the Motorworld Defendants' Motion will be granted in part and denied in part.

An appropriate order follows.

January 31, 2017                                      /s/ A. Richard Caputo
Date                                                        A. Richard Caputo
                                                               United States District Judge

23